**Najwa BAKAL, Plaintiff–Appellant,**

v.

**John ASHCROFT, Attorney General, and Immigration and Naturalization Service, Defendants–Appellees.**

No. 01–3719.

United States Court of Appeals, Sixth Circuit.

Jan. 9, 2003.

Before MERRITT and GILMAN, Circuit Judges; and TARNOW, District Judge.*

## OPINION

TARNOW, District Judge.

Najwa Bakal was ordered deported *in absentia* by a United States Immigration Court after failing to appear for her deportation hearing. The Board of Immigration Appeals (BIA) of the Immigration and Naturalization Service (INS) refused to consider Bakal's appeal because a statute and an INS regulation establish that the exclusive means for appealing an *in absentia* deportation order is to file a motion to reopen the proceedings with the Immigration Court. Bakal appeals the BIA's refusal to examine the Immigration Court's *in absentia* deportation order. For the reasons set forth below, we AFFIRM the decision of the BIA.

## I. BACKGROUND

### A. Factual Background

Petitioner Najwa Bakal is a citizen and native of Iraq who entered the U.S. as a visitor for pleasure on or about March 28, 1993. On August 26, 1994 she pleaded guilty to First Degree Retail Fraud in Michigan (Mich. Comp. Laws Ann. § 750.356c, theft of merchandise valued at greater than $1000), for which she was admitted to a youthful trainee program and sentenced to probation. When she sought lawful permanent resident status with the INS on September 30, 1995, she indicated on her application that she had not "been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance." On

---

* The Honorable Arthur J. Tarnow. United States District Judge for the Eastern District of Michigan, sitting by designation.

March 7, 1996, Bakal was adjusted to lawful permanent resident status by the INS.

## B. Procedural Background

On October 14, 1999, Bakal was charged with being removable by the INS on three counts: 1) that at the time of her adjustment to lawful permanent resident status, she had been convicted of, or had admitted to committing a crime of moral turpitude (8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(2)(A)(i)(I)); 2) that within five years after her admission to the U.S., she was convicted of a crime involving moral turpitude (8 U.S.C. § 1227(a)(2)(A)(i)); and 3) that at the time of her adjustment of status, she was inadmissible because she willfully misrepresented a material fact on her adjustment of status application (8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(6)(C)(i)).

On February 16, 2000, a removal hearing was held by an Immigration Judge (IJ) wherein Bakal denied the charges of removability. This hearing was continued to July 12, 2000, and continued again to August 18, 2000. The IJ instructed Bakal at the February and July hearings that her failure to appear at the next scheduled continuation would result in an order of her deportation.

Bakal failed to attend the August 18, 2000 hearing. At this hearing, based on evidence submitted by the INS, including Bakal's signed plea to the retail fraud charge, the IJ ordered her deported to Iraq. The IJ's written decision states that Bakal had previously conceded her removability, that the INS had submitted documentary evidence establishing the truth of its factual allegations, and that Bakal's absence constituted an abandonment of her applications.

On August 31, 2000, Bakal appealed the IJ's decision to the BIA, asserting that the record did not support a finding that she had been convicted of a crime of moral turpitude nor that she had engaged in fraud or misrepresentation of a material fact. On May 31, 2001, the BIA issued a *per curiam* order stating that it was precluded by statute from considering the appeal under 8 U.S.C. § 1229a(b)(5)(C). The BIA cited relevant BIA caselaw, noting that it required the Petitioner to file a motion to reopen with the IJ. On June 27, 2001, Bakal filed the instant appeal for review of the BIA's final decision not to examine the *in absentia* deportation order. On June 28, 2001, Bakal filed a motion for stay of deportation with this Court, which was granted on August 14, 2001.

## II. JURISDICTION, SCOPE AND STANDARD OF REVIEW

This Court has jurisdiction to review the final decision of the BIA pursuant to 8 U.S.C. § 1252. We review questions of law in a deportation order *de novo*. *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001). The Court will uphold the decision of the BIA if there is reasonable, substantial, and probative evidence in the record supporting the decision. *INS v. Elias–Zacarias*, 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir.2001).

## III. ANALYSIS

### A. Under statute, INS regulation, and associated caselaw, the BIA did not err in denying review of the *in absentia* order of deportation

■ As part of the Immigration and Nationality Act, 8 U.S.C. § 1229a(b)(5)(C) governs the process for seeking a rescission of an order deporting an alien *in absentia*. This statute states:

Such an order may be rescinded only—
(i) upon a motion to reopen filed within 180 days after the date of the order of

removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section), or

(ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

8 U.S.C. § 1229a(b)(5)(C).

The obvious negative implication of the above statute, *i.e.*, that the BIA will not hear appeals of removal orders rendered *in absentia,* is further clarified by INS regulation: "[A]n appeal shall lie from a decision of an immigration judge to the Board of Immigration Appeals, except that no appeal shall lie from an order of removal entered *in absentia.*" 8 C.F.R. § 240.15. In addition, BIA caselaw clearly interprets the rule concerning *in absentia* removal orders where notice of the hearing was provided:

Such a removal order may be rescinded if a motion to reopen is filed with the Immigration Judge within 180 days after the date of the order of removal and if the alien demonstrates that the failure to appear was because of exceptional circumstances.

*Matter of Guzman–Arguera,* Interim Decision 3392, 1999 WL 322974 (BIA 1999) (citing 8 U.S.C. § 1229a(b)(5)(C)(i)).

The record indicates that on August 18, 2000, Bakal was ordered deported *in absentia* by the IJ. Petitioner nowhere contends that her failure to appear was because of exceptional circumstances. The record reflects that clear notice of the hearing had been provided to her as well as the consequences of a failure to attend. Bakal does not contend that she did not

receive notice of the August 18, 2000 removal proceeding. She also does not allege that she was in custody at the time of the hearing. Therefore, under 8 U.S.C. § 1229a(b)(5)(C), the BIA did not have authority to hear her appeal. The BIA's decision not to evaluate Bakal's appeal was proper as per statute, regulation, and caselaw, as was its indication that a motion to reopen would have been the appropriate course.

**B. The BIA did not deny Procedural Due Process when it denied review of the Immigration Court's valid order entered after Bakal was afforded the opportunity of a fair hearing**

Bakal contends that she has been denied Procedural Due Process because the underlying order of the Immigration Court is materially defective and she has been denied the right of review by the BIA. However, an examination of relevant Due Process standards shows that there is no violation in the proceedings below.

The Supreme Court has long held that once an alien has been admitted to lawful residence, Procedural Due Process mandates that "not even Congress may expel him without allowing him a fair opportunity to be heard." *Kwong Hai Chew v. Colding,* 344 U.S. 590, 598, 73 S.Ct. 472, 97 L.Ed. 576 (1953); *see also Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (recognizing a Fifth Amendment right in deportation proceedings). The requirement of "a fair opportunity to be heard" is echoed in the Sixth Circuit. *E.g., Aguilera–Enriquez v. INS,* 516 F.2d 565, 568 (6th Cir.1975); *Sad v. INS,* 246 F.3d 811, 819 (6th Cir.2001). *See generally Detroit Free Press v. Ashcroft,* 303 F.3d 681, 687–690 (6th Cir.2002). Other Circuits have directly addressed the issues of *in absentia* deportation and Due Process, finding accord where a fair hear-

ing has been offered. *E.g., Maldonado–Perez v. INS*, 865 F.2d 328, 333 (D.C.Cir. 1989) ("An *in absentia* deportation is legitimate if the alien had a reasonable opportunity to be present and failed to provide reasonable cause for his absence."); *Shah v. INS*, 788 F.2d 970, 972 (4th Cir.1986) (affirming an *in absentia* deportation order where the alien had reasonable opportunity to attend the hearing); *Patel v. INS*, 803 F.2d 804, 806 (5th Cir.1986) ("The fact that the hearing was held *in absentia* is not *per se* violative of due process.").

Bakal was given a fair opportunity to be heard at her deportation hearing. Her claim of a denial of Due Process simply ingnores the reality that she failed to attend her own hearing. Generally, we are dubious of an alien's claim of violation of Procedural Due Process where the deportation order is entered because the alien has failed to attend her deportation hearing for less than exceptional circumstances. In such an instance, the alien has simply failed to prosecute her own case. The resulting *in absentia* order is akin to a default judgment. However, we do not comment here on issues of Due Process that might arise in the scenario where the government's charges or proofs of removability are clearly and materially defective. Such a case is not before us.

On the facts of this case, Bakal cannot successfully assert that the underlying decision of the IJ is materially defective for failing to meet the required "clear, unequivocal, and convincing" evidentiary standard for proving removability. 8 U.S.C. § 1229a(b)(5)(a). The INS did in fact submit sufficient evidence supporting the IJ's finding as to the charge against Bakal under 8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(2)(A)(i)(I). Together, these provisions render inadmissible an alien who is "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). The record includes a copy of Bakal's plea of guilty to First Degree Retail Fraud, which was admitted into evidence at the August 18, 2000 hearing. This plea is signed by Bakal and states "I took merchandise from Lord & Taylor. I did not pay."

Theft is considered a crime of moral turpitude. *Matter of Grazley*, 14 I. & N. Dec. 330, 332, available in 1973 WL 29441 (BIA 1973) (finding theft involves moral turpitude when a permanent taking is intended); *Matter of Lopez–Meza*, Int. Dec. 3423, available in 1999 WL 1223810 (BIA 1999). Bakal's plea document, along with other documents related to her criminal proceedings, stand as "clear, unequivocal, and convincing" evidence that she admitted committing a crime, or acts constituting material elements of a crime involving moral turpitude. Thus, the INS has adequately proven at least two of the three independently sufficient criteria of inadmissibility under 8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ's order of deportation therefore stands on solid legal and factual grounds. Any conceivable Due Process concerns are allayed by the validity of the underlying decision of the Immigration Court.

## IV. CONCLUSION

For the reasons set forth above, we **AFFIRM** the decision of the BIA not to review the Immigration Court's valid *in absentia* order that Petitioner be deported to Iraq.