*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0369a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHRISTOPHER PICKERING,

*Petitioner,*

v.

No. 03-3928

ALBERTO GONZALES, Attorney General,

*Respondent.*

> On Petition for Review of a Decision
> by the Board of Immigration Appeals.
> No. A70 539 319 Detroit.

Argued: December 1, 2004

Decided and Filed: October 4, 2006

Before: DAUGHTREY and GILMAN, Circuit Judges, and RICE, Senior District Judge.[*]

---

## COUNSEL

**ARGUED:** Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Greg D. Mack, UNITED STATES DEPARTMENT OF JUSTICE,, Washington, D.C., for Respondent. **ON BRIEF:** Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Greg D. Mack, Donald Keener, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## AMENDED OPINION

---

WALTER H. RICE, Senior District Judge. Petitioner Christopher Pickering seeks review of a Board of Immigration Appeals ("BIA") order permanently barring him from the United States, based on a Canadian conviction for a drug offense, for which he was later pardoned pursuant to Canadian law, and which was later quashed by a Canadian appellate court.

Finding prejudicial error, we grant the Petition for Review.

---

[*] The Honorable Walter H. Rice, Senior United States District Court Judge for the Southern District of Ohio, sitting by designation.

1

Petitioner is a native and citizen of Canada. On November 6, 1980, he was indicted in Ontario, Canada, for the unlawful possession of Lysergic Acid Diethylamide ("LSD"). He pled guilty. His sentence required him to pay a fine of $300.00 (Canadian) or, in default of payment, to serve 30 days in custody.

In 1991, Petitioner entered the United States as a non-immigrant, intra-company transferee. His wife and their two children followed him as derivative non-immigrants. In 1992, the Immigration and Naturalization Service ("INS")[1] approved a Petition for Alien Worker (Form I-140) filed on behalf of Petitioner's wife by her employer. Mrs. Pickering later applied for adjustment of status based on the approved I-140, and Petitioner and their children filed derivative adjustment of status applications based on their relationship to Mrs. Pickering. On June 17, 1993, the INS approved Mrs. Pickering and the children's adjustment of status applications, making them lawful permanent residents.

On February 28, 1996, Petitioner received a pardon of his LSD conviction. Notwithstanding the pardon, his attempt to adjust his status was denied. On May 7, 1997, Petitioner filed a notice of appeal, with the Canadian court, seeking to have that conviction quashed. In a judgment dated June 20, 1997, the Canadian court quashed the Petitioner's 1980 conviction for unlawful possession of LSD. On August 21, 1998, the Petitioner's application for adjustment of status was again denied and removal proceedings were initiated, with the Immigration Judge finding the Petitioner to be removable on the basis of his LSD conviction. In his decision, the Immigration Judge declined to give effect to the Canadian court's order quashing the conviction, concluding that the court's action was solely for rehabilitative purposes, entered in order to avoid adverse immigration consequences and to allow the Petitioner to live permanently in the United States. The Petitioner appealed the Immigration Judge's decision to the BIA, and the BIA issued a published opinion denying Petitioner's appeal. *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003).

The BIA had jurisdiction, pursuant to 8 C.F.R. § 1003.1(b), to review the decision of the Immigration Judge who ordered Petitioner's removal. The BIA decision is a final agency decision. 8 C.F.R. § 1241.1. The Petitioner's Petition for Review was filed in a timely manner pursuant to 8 U.S.C. § 1252(b)(1). This Court has jurisdiction to review the BIA decision pursuant to 8 U.S.C. § 1252(a).

We review questions of law raised in removal proceedings *de novo*. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). However, in order to reverse a BIA factual determination, the evidence must compel a contrary conclusion. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001).

Pickering first argues that the BIA's decision fails as a matter of law. However, a review of that decision and the applicable case law reveals that the BIA correctly interpreted the law by holding that, when a court vacates an alien's conviction for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes. *Matter of Pickering*, 23 I&N Dec. 621, 624 (BIA 2003). This interpretation of the law is consistent with that of other circuits and with our own interpretation. A conviction vacated for rehabilitative or immigration reasons remains valid for immigration purposes, while one vacated because of procedural or substantive infirmities does not.[2] *See Zaitona v. INS*, 9 F.3d 432 (6th Cir.

---

[1] The functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

[2] A conviction is vacated for rehabilitative purposes where state law provides a means for the trial court to enable a Defendant to avoid certain continuing effects under state law from that conviction. *See Murillo-Espinoza v. INS*, 261 F.3d 771 (9th Cir. 2001); *see also United States v. Campbell*, 167 F.3d 94 (2nd Cir. 1999).

1993); *see also Murillo-Espinoza v. INS*, 261 F.3d 771 (9th Cir. 2001); *Herrera-Inirio v. INS*, 208 F.3d 299 (1st Cir. 2000); *Sandoval v. INS*, 240 F.3d 577 (7th Cir. 2001); *but compare Renteria-Gonzalez v. INS*, 322 F.3d 804 (5th Cir. 2002) (holding that all convictions remain valid for immigration purposes) *with Discipio v. Ashcroft*, 369 F.3d 472 (5th Cir. 2004) (following precedent in *Renteria-Gonzalez*, while criticizing it as overbroad).

The BIA upheld the Immigration Judge's order that Petitioner was removable based on the quashed drug conviction, ruling that the Canadian court had quashed the Petitioner's drug conviction solely for immigration purposes, in other words, to avoid adverse immigration consequences. *Matter of Pickering*, 23 I&N Dec. at 625, J.A. at 38. In determining that the Petitioner's conviction remained valid for immigration purposes, despite the order of the Canadian court quashing the conviction, the BIA relied on "the law under which the Canadian court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction." *Id.*

However, the record used by the BIA to determine that the Canadian court acted solely for immigration purposes appears to be incomplete. The BIA based its ruling on the fact that the "judgment only refers, as the grounds for ordering the conviction quashed, to the respondent's request and his supporting affidavit." *Id.* In fact, the Canadian court, in quashing the Petitioner's conviction, relied on "the notice of appeal filed herein and the affidavit of the [Petitioner] and [the] hearing . . ." J.A. at 62. There is nothing in the record before us regarding the hearing that the Canadian court relied upon, in part, to quash the conviction.

The Petitioner, in his notice of appeal and affidavit, stated that he was appealing his conviction because of the bar it placed on his permanent immigration to the United States. J.A. at 58, ¶ 5; 61, ¶ 18. The BIA imparted the Petitioner's motivation for seeking to have the conviction quashed onto the Canadian court as its rationale for quashing the conviction. *Matter of Pickering*, 23 I&N Dec. at 625, J.A. at 38. However, the motive of the Petitioner in seeking to have his conviction quashed is of limited relevance to our inquiry. *See Sandoval v. INS*, 240 F.3d 577, 583 (7th Cir. 2001). Such motive is relevant only to the extent that the Canadian court relied upon it in quashing the conviction. As the record before us does not include a record of the hearing and is, therefore, incomplete, it is impossible to tell the extent to which the Canadian court relied upon Petitioner's motive, or even why the Canadian court acted in the manner it did.

The government relies on this Court's ruling in *Zaitona*, 9 F.3d at 437, to support the proposition that "where the record, as here, provides a reasonable basis to conclude that a motion to quash or vacate a conviction is driven by immigration hardships and not [by] remedying statutory or constitutional violations, . . . a conviction remains a conviction for immigration purposes." Final Brief of Respondent at 35. *Zaitona*, however, is easily distinguishable on the facts.

In *Zaitona*, the only explanation offered by the state court for vacating the conviction was so that it might consider a Judicial Recommendation Against Deportation ("JRAD"). *Zaitona*, 9 F.3d at 437. Immediately following the vacation of his conviction, Zaitona pleaded guilty to the identical crime. The only difference between the first and second sentence was the JRAD. *Id.* In *Zaitona*, "[i]t was unimportant to [the Court's] determination that Zaitona's attorney may have originally surrounded his request for the JRAD with language of ineffective assistance of counsel . . .," because it was apparent from the order of the court and the record that the conviction was vacated solely for immigration reasons. *Id.* Unlike *Zaitona*, in the instant case, the order of the Canadian court is silent on the question of its motivation, referring instead to the Petitioner's request, supporting affidavit and "hearing." *Matter of Pickering*, 23 I&N Dec. at 625, J.A. at 38. In *Zaitona*, the record provided more than a "reasonable basis" for concluding that the judgment was vacated for immigration reasons. Indeed, the record clearly revealed "substantial evidence that the [] court's action was taken for the sole purpose of relieving Zaitona from deportation." *Zaitona*, 9

F.3d at 437. Here, the record before us lacks the record of the hearing upon which the Canadian judge relied, at least in part, in quashing the conviction.

As the order of the Canadian court is silent on the question of *its* motivation or rationale, the BIA looked to the notice of appeal and affidavit filed by the Petitioner, ruling that neither identified a basis to question the integrity of the underlying criminal proceeding or conviction. There is no reference to the hearing before the Canadian court, no indication that the BIA had that record in its possession and no indication that it reviewed it in any fashion to determine the rationale behind the decision of that court. *Id.* In its decision, the BIA distinguished the Petitioner's case from its ruling in *Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378. J.A. at 36, 23 I&N Dec. at 623. In *Rodriguez-Ruiz*, a state court vacated a conviction pursuant to a state law that authorized vacation based on the legal merits of the underlying provision. 22 I&N Dec. at 1379. In the instant case, because the Canadian court order made no reference to any legal authority, the BIA presumed that its decision was made solely for immigration purposes. J.A. at 38, 23 I&N Dec. at 625. While assuming that the Canadian court adopted the Petitioner's motive, the BIA has also assumed that it ignored the legal basis the Petitioner articulated for seeking to have his conviction quashed.

In his notice of appeal to the Canadian court (J.A. at 58, ¶ 6), and in the affidavit in support of said appeal (J.A. at 61, ¶ 21), the Petitioner indicates that he is appealing his conviction pursuant to § 24(1) of the Canadian Charter of Rights and Freedoms. Section 24(1) provides that: "[a]nyone whose rights or freedoms, as guaranteed by this Charter, have been infringed or denied, may appeal to a court of competent jurisdiction to obtain such remedy as the court considers appropriate and just." Affidavit of Kent Roach, J.A. at 40, ¶ 7. The Petitioner presented expert testimony, via affidavit, which concluded that, in order to quash the Petitioner's conviction, the Canadian court "must have concluded that [his] rights under the Canadian Charter of Rights and Freedoms [had] been violated." *Id.* at 41, ¶ 8.

According to the expert testimony provided by the Petitioner, which was undisputed by the government, a Canadian court can quash a conviction under § 24(1) of the Charter only for reasons related to a violation of rights granted Canadian citizens in the Canadian Charter of Rights and Freedoms. *Id.* at 41, ¶ 10. If the Canadian court acted pursuant to the legal authority cited and relied upon by the Petitioner, it could not have acted solely for immigration reasons. In presuming that the Canadian court quashed the conviction for immigration reasons, the BIA concluded that the Canadian court assumed the Petitioner's motives as stated in his affidavit and notice of appeal, but did not consider the legal authority he cited.

When the government seeks to deport a resident alien, it carries a heavy burden. *Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 636 (1967). To support a determination that an immigrant is deportable, the government must establish its allegations by "clear, unequivocal, and convincing evidence." *Zaitona*, 9 F.3d at 434 (quoting *Woodby v. INS*, 385 U.S. 276, 285 (1966)).[3] Once the INS has established its *prima facie* case, the burden of going forward to produce evidence of non-deportability then shifts to the petitioner. *Id.* (internal citations and quotation marks omitted). As an initial matter, the government has satisfied its *prima facie* case by pointing to evidence that the Petitioner was convicted of a drug crime. The Petitioner, for his part, has produced evidence that the conviction for which the government wishes to deport him has been vacated by a court of competent jurisdiction. This is sufficient to meet his burden under *Zaitona* of showing non-deportability. Accordingly, the Petitioner is deportable only if the

---

[3] *Zaitona*, a 1993 decision, pre-dates a 1996 amendment to 8 U.S.C. § 1229a(c)(3) that deleted the term "unequivocal" from the Immigration and Nationality Act. We think the amendment has only a minimal effect on the standard, if any, because evidence that is "equivocal" could not be considered "clear and convincing." Nevertheless, we acknowledge that, as the government argues, the current standard is "clear and convincing evidence." *See also* 8 C.F.R. § 1240.8(a).

government can show, with clear and convincing evidence, that the conviction was vacated solely for immigration reasons. *See id.*; *see also Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1130 (10th Cir. 2005). To prove deportability in this case, the government must produce evidence of a conviction that remains valid for immigration purposes. In order to meet its burden, the government must prove, with clear and convincing evidence, that the Petitioner's conviction was quashed solely for rehabilitative reasons or reasons related to his immigration status, i.e., to avoid adverse immigration consequences. The government has failed to meet its burden.[4]

The BIA relied on the Petitioner's notice of appeal and affidavit in determining that the Canadian court acted on the basis of the Petitioner's immigration status. In doing so, it overlooked the fact that the record was incomplete without a record of the hearing held by the Canadian court, and minimized or even ignored the fact that the Petitioner appealed his conviction pursuant to a law that allows a remedy only for procedural or substantive defects in the underlying conviction. The conclusion that the Canadian court acted solely for immigration reasons can only be reached by inference, based on the Petitioner's notice of appeal and affidavit. As the record from the Canadian court appears to be incomplete, and the BIA relied on certain parts of the Petitioner's affidavit and notice of appeal, while minimizing or ignoring other parts, the evidence supporting deportation can hardly be described as "clear and convincing."

The BIA, in the instant case, upheld the Immigration Judge's finding that the government had met its burden of proving that the Petitioner was deportable with clear and convincing evidence. That determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Under this deferential standard, we may not reverse the BIA determination simply because we would have decided the matter differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998); *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). In order to reverse a BIA factual determination, the evidence must compel a contrary conclusion. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). In order to meet its burden in this case, the government either would have had to present direct evidence that demonstrates that the Canadian court quashed the conviction for immigration reasons, or present evidence from which one could infer and conclude that the Canadian court acted solely to affect Pickering's immigration status. This, the government failed to do.

The Petitioner was found by the IJ, and later the BIA, to be deportable based upon a Canadian drug conviction. The conviction, however, had been quashed. A vacated conviction remains valid for immigration purposes only if it was vacated *solely* for rehabilitative reasons. The IJ, and later the BIA, found that the Petitioner's quashed conviction was still valid for immigration

---

[4]The government argues, in a supplemental brief filed after the close of oral argument, that the burden to prove that the conviction was *not* quashed solely for immigration reasons lies with the Petitioner. However, we agree with the determination of the BIA, the Seventh Circuit and the Tenth Circuit that the government bears the burden of proving that a vacated conviction remains valid for immigration purposes. *See Matter of Kaneda*, I. & N. Dec. 677, 680 (1977); *Sandoval* 240 F.3d at 581-82; *Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1130 (10th Cir. 2005). Even were the burden with the Petitioner, he has met that burden. The order of the Canadian court quashing the Petitioner's conviction relies on the affidavit of the Petitioner, the notice of appeal, and on a hearing held in the matter. In his affidavit seeking to have his conviction quashed, the Petitioner relied on Canadian legal authority that would allow the Canadian court to act only if there existed some procedural or substantive defect in the conviction. The only legal authority cited anywhere in the record of the Canadian court allows it to act only to redress violations of the Petitioner's rights. When a court acts pursuant to a law that allows it to act based only on the merits of the underlying position, it is presumed not to have acted contrary to that law, solely to enable the Petitioner to avoid adverse immigration consequences. *See Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378, 1379-80; *see also Cruz-Garza*, 396 F.3d at 1131-32 (holding that where state court acted pursuant to legal authority that allowed reduction of conviction based on reasons unrelated to adverse immigration consequences, the government failed to demonstrate that the petitioner was deportable even though evidence on the record allowed for the reasonable inference that the court was motivated, at least in part, by a desire to avoid said consequences).

purposes, apparently concluding that it had been vacated solely for rehabilitation reasons, to wit: to allow the petitioner to remain in this country. It is the opinion of this Court that the evidence on the record does not support such a finding. Specifically, we conclude that the government has failed to satisfy its burden of proving deportability with clear and convincing evidence.

Generally, where a reviewing court cannot sustain an agency decision, because the agency has failed to offer a legally sufficient basis for its decision, the appropriate remedy is to remand to the agency for further consideration. *See I.N.S. v. Ventura*, 537 U.S. 12, 16-17 (2002); *see also N'Diom v. Gonzales*, 442 F.3d 494, 496 (6th Cir. 2006). However, that rule applies most often in asylum cases where the BIA has failed to consider evidence on the record, or has insufficiently articulated its reasoning. *N'Diom*, 442 F.3d at 498-99. In this case, while the Petitioner is not seeking asylum, but rather is asking us to review the removal proceedings in which an IJ and the BIA concluded that he was deportable, a proceeding under a different statutory section than an application for asylum, the dispositive difference appears to be that this is not a situation where the hearing officer failed to consider evidence on the record or insufficiently articulated his reasoning.

Were we to remand for further proceedings, the only way that the government might satisfy its burden is by introducing evidence not currently on the record. In reviewing removal proceedings, under 8 U.S.C. § 1252(a)(1), while we have broader powers of review than are granted courts in reviewing petitions for asylum, we do not have the authority to remand for consideration of additional evidence where one of the parties seeks to introduce such, and there is nothing to indicate that Congress intended to grant us the authority to do such *sua sponte*.[5]

The record before the BIA at the time it made its decision did not contain evidence sufficient to support a finding of deportability. Had the BIA properly applied the facts before it to the law, it would have held that the Petitioner was not deportable. The proper course in the circumstances before us is to reverse without a remand for further consideration. *See Cruz-Garza v. Ashcroft*, 396 F.3d 1125 (10th Cir. 2005) (reversing and vacating BIA ruling in a factually analogous situation).

We conclude that the INS did not prove by clear and convincing evidence that Pickering's conviction remained valid for immigration purposes. The INS did not prove that the Canadian court quashed the Petitioner's conviction solely to avoid adverse immigration consequences. The BIA held that the government had satisfied its burden of proving the Petitioner deportable, and the evidence compels a contrary conclusion. We thus hold that the BIA and the Immigration Judge erred in finding that Pickering was deportable. Accordingly, the judgment of the BIA is REVERSED and we REMAND this case to the Board of Immigration Appeals for entry of an order terminating deportation proceedings and quashing the order of deportation.

---

[5]Section 1252(a)(1) provides that:

Judicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except . . . that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

Where applied, § 1252(a)(1) has most often limited the petitioner's ability to introduce new evidence on review, or the court's ability to require the BIA to open the record to take additional evidence. *See Lin v. Gonzales*, 150 Fed. Appx. 326, 2005 WL 2450255 (5th Cir. 2005).