*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0032p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

HENDRY SANUSI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

Nos. 05-3355/3676

>

On Petition for Review from the
Board of Immigration Appeals.
No. A79 106 176.

Argued: July 27, 2006

Decided and Filed: January 23, 2007

Before: SILER, McKEAGUE, and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioner. Mary Jane Candaux, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioner. Mary Jane Candaux, Mark C. Walters, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

---

GRIFFIN, Circuit Judge. In these consolidated appeals, petitioner Hendry Sanusi petitions for review of two orders of the Board of Immigration Appeals (the "BIA"). We deny the petitions for review on the ground that the state court's vacation of Sanusi's conviction was ineffective for immigration purposes because it was done solely for the purpose of ameliorating the immigration consequences to petitioner. *Zaitona v. I.N.S.*, 9 F.3d 432 (6th Cir. 1993). For this reason, we hold that the present case is distinguishable from *Pickering v. Gonzales (amended opinion)*, 465 F.3d 263 (6th Cir. 2006).

I.

Petitioner Sanusi, a native and citizen of Indonesia, entered the United States on August 16, 1999, as a student pursuant to an F-1 student visa. On January 3, 2002, petitioner was cited for property theft in violation of ARK. CODE ANN. § 5-36-103, which apparently occurred in the city of

Conway, Faulkner County, Arkansas.  The details of the crime are not set forth in the record or briefs.  The offense is, at a minimum, a "class A misdemeanor" (§ 5-36-103(b)(4)) with a maximum possible sentence of one year in prison.[1]  ARK. CODE ANN. § 5-4-401(b)(1).  In petitioner's case, the Faulkner County district court ordered him to pay a $500 "criminal fine" and $100 in "criminal costs."  *See* ARK. CODE ANN. § 5-4-323(e) (authorizing a fine "not exceeding one thousand dollars").  On January 22, 2003, petitioner paid the fine in lieu of a court appearance.

On March 26, 2003, the Department of Homeland Security (the "DHS") charged petitioner with removability as an alien convicted of a crime involving moral turpitude within five years of his admission to the United States.  8 U.S.C. § 1227(a)(2)(A)(i).[2]

On July 9, 2003, petitioner, through counsel, filed a Petition for Writ of Coram Nobis (the "Petition") with the Faulkner County district court, requesting vacation of his theft conviction.  In the Petition, Sanusi referenced the deportation proceedings, noted that he was subject to deportation action, and averred that "[t]he only basis for preventing this collateral consequence of deportation is through a vacation of the conviction" (Petition, ¶¶ 4, 5).  Petitioner further asserted that he "was not advised on the citation that by paying the fine and avoiding a court appearance his guilty plea could or would result in drastic and severe immigration consequences, specifically deportation from the United States" (*Id.* at ¶ 6).  In this regard, petitioner complained that:

> In this present case the District Court of [sic] established a procedure whereby one could simply pay the fine and resolve the matter expeditiously, without resort to court appearances and other costly efforts.  The procedure does not contemplate that aliens who follow the established procedures subject themselves to deportation and lifetime banishment from the United States.  Without relief under this Petition for a Writ of Coram Nobis, the reasonable procedure established by this court will be converted to a "Life Sentence" by the [I]mmigration Act.

* * *

> The fundamental and constitutional fault in the present case is in the assertion that the (petitioner) was not on notice by the Arkansas Uniform Enforcement Citation nor advised of the drastic immigration consequences of the guilty plea, which occurred when he paid the fine.  It is highly likely that had petitioner been aware of the lurking harm to the petitioner and his entire family resulting from the payment of the fine, other creative means would have been implemented to assure a just and fitting punishment for the crime without risking this immigration consequence.

---

[1] ARK. CODE ANN., § 5-36-103(a) provides:

A person commits theft of property if he or she knowingly:

(1)   Takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property; or

(2)   Obtains the property of another person, by deception or by threat, with the purpose of depriving the owner of the property.

[2] This statute provides in pertinent part that "[a]ny alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."  8 U.S.C. § 1227(a)(2)(A)(i).  This court has held that "[t]heft is considered a crime of moral turpitude." *Bakal v. Ashcroft*, 56 F. App'x 650, 654 (6th Cir. 2003) (citing *Matter of Grazley*, 14 I. & N. Dec. 330, 332, available at 1973 WL 29441 (BIA 1973)).  Petitioner does not contest the categorization of his particular theft offense as a crime of moral turpitude.

* * *

The Immigration Court has set the matter for hearing on July 28, 2003 after which his fate will be sealed.  The Immigration Judge is compelled to order deportation and he has no authority to do otherwise.  There is no appeal of his decision to any Federal Court.

On August 11, 2003, the Faulkner County district court granted a writ of error *coram nobis* (the "Writ") vacating petitioner's theft conviction.[3]  There is no reference in the record or by the parties regarding whether there was a hearing on the matter, and the certified court docket entry does not give any explanation for the basis for granting the Petition.  It merely notes:  "On 8-11-03, Milton Dejesus, attorney for defendant, filed a petition for writ of *coram nobis*.  City attorney had no objection.  Judge granted the motion."

Prior to the master hearing date before the Immigration Judge ("IJ"), petitioner filed a Motion to Terminate Removal Proceedings for Lack of Final Conviction, arguing that in light of issuance of the Writ vacating his conviction, he no longer had a conviction for immigration purposes and respondent thus could not meet its burden of establishing that petitioner was deportable as charged in the Notice to Appear.

On February 10, 2004, following a hearing to determine whether petitioner was removable as charged in the Notice to Appear, the IJ issued his Order and Decision.  The IJ found that petitioner's record of conviction and his admission to the conviction demonstrated that he was convicted of a crime involving moral turpitude within the meaning of the Immigration and Naturalization Act ("INA").  Citing BIA precedent, *Matter of Pickering*, 23 I. & N. Dec. 621 (BIA 2003), in which the BIA held that the immigration court is not to give effect to an order entered by a state criminal court when the sole purpose of the order is to provide immigration relief, the IJ concluded that the Writ vacating petitioner's conviction was issued by the Arkansas district court to ameliorate the immigration consequences to petitioner and thus was ineffective in preventing deportation.

Petitioner appealed the IJ's adverse decision to the BIA, which affirmed without opinion on March 3, 2005.  Petitioner thereafter timely filed his first petition for review with this court (Case No. 05-3355).

On April 4, 2005, petitioner filed a motion to reconsider the March 3, 2005, order with the BIA.  In an order dated May 6, 2005, the BIA denied petitioner's motion.  Petitioner then filed his second petition for review (Case No. 05-3676).  The two petitions for review have been consolidated for consideration by this court.

## II.

The BIA had jurisdiction over Sanusi's petition for review pursuant to 8 C.F.R. § 1003.1(b)(3), which confers appellate jurisdiction over decisions of immigration judges in removal proceedings.  The BIA may reconsider any case in which it has rendered a decision.  8 C.F.R. § 1003.2(a).  This court has jurisdiction under 8 U.S.C. § 1252(a), which gives the Court of Appeals

---

[3]"'The function of the writ of *coram nobis* is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment.'"  *Clorid v. State*, 182 S.W.3d 477, 479 (Ark. 2004) (quoting *State v. Larimore*, 17 S.W.3d 87, 93 (Ark. 2000)).  "'*Coram nobis* proceedings are attended by a strong presumption that the judgment of conviction is valid'" and "'[t]he mere naked allegation that a constitutional right has been invaded will not suffice.'"  *Id.* (quoting *Larimore*, 17 S.W.3d at 93).  "The writ of error *coram nobis* is an extraordinary writ, known more for its denial than its approval."  *Echols v. State*, 201 S.W.3d 890, 893 (Ark. 2005).

exclusive jurisdiction to review final orders of removal.  Both of petitioner Sanusi's petitions for review were timely filed within thirty days of the BIA's orders.  INA § 242(b), 8 U.S.C. § 1252(b)(1).  Venue is likewise proper because the proceedings before the IJ were completed in Memphis, Tennessee, within this judicial circuit.  8 U.S.C. § 1252(b)(2).

III.

"In considering a petition for review of a decision of the Board of Immigration Appeals, we review the Board's legal determinations de novo . . . and its factual findings under the substantial evidence standard[.]  The substantial evidence standard requires us to uphold the Board's findings as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (citations omitted).  Findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004).  Where the BIA affirms without opinion the decision of the IJ, this court directly reviews the decision of the IJ.  *Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003).

"The question whether [an alien's] conviction renders him removable . . . is a non-discretionary, purely legal question; the Courts of Appeal ordinarily must review such questions *de novo.*"  *Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005).

The BIA's denial of a motion to reopen or reconsider a removal order is reviewed for an abuse of discretion.  *Denko*, 351 F.3d at 723 (6th Cir. 2003).  "An abuse of discretion can be shown when the IJ or Board offers no 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (quoting *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982).  "When the BIA adopts the reasoning of the IJ, we review the IJ's decision to determine whether the BIA abused its discretion." *Id.*

IV.

Recently, in *Pickering*, our court reaffirmed the well-established principle of law that the vacation of a conviction is ineffective for immigration purposes if it was done so solely to avoid immigration hardship:

> Pickering first argues that the BIA's decision fails as a matter of law.  However, a review of that decision and the applicable case law reveals that the BIA correctly interpreted the law by holding that, when a court vacates an alien's conviction for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes. . . .  This interpretation of the law is consistent with that of other circuits and with our own interpretation.  A conviction vacated for rehabilitative or immigration reasons remains valid for immigration purposes, while one vacated because of procedural or substantive infirmities does not.  *See Zaitona v. I.N.S.*, 9 F.3d 432 (6th Cir. 1993); *see also Murillo-Espinoza v. I.N.S.*, 261 F.3d 771 (9th Cir. 2001); *Herrera-Inirio v. I.N.S.*, 208 F.3d 299 (1st Cir. 2000); *Sandoval v. I.N.S.*, 240 F.3d 577 (7th Cir. 2001); *but compare Renteria-Gonzalez v. I.N.S.*, 322 F.3d 804 (5th Cir. 2002) (holding that all convictions remain valid for immigration purposes) *with Discipio v. Ashcroft*, 369 F.3d 472 (5th Cir. 2004) (following precedent in *Renteria-Gonzalez*, while criticizing it as overbroad).

*Pickering*, 465 F.3d at 266.

This court noted, however, that the record upon which the BIA based its decision "appears to be incomplete" and "[t]here is nothing in the record before us regarding the hearing that the Canadian court relied upon, in part, to quash the conviction." *Id*. at 267. In this regard, this court stated:

> The Petitioner, in his notice of appeal and affidavit, stated that he was appealing his conviction because of the bar it placed on his permanent immigration to the United States. . . . The BIA imparted the Petitioner's motivation for seeking to have the conviction quashed onto the Canadian court as its rationale for quashing the conviction. . . . However, *the motive of the Petitioner in seeking to have his conviction quashed is of limited relevance to our inquiry. See Sandoval v. INS, 240 F.3d 577, 583 (7th Cir. 2001). Such motive is relevant only to the extent that the Canadian court relied upon it in quashing the conviction.* As the record before us does not include a record of the hearing and is, therefore, incomplete, it is impossible to tell the extent to which the Canadian court relied upon Petitioner's motive, or even why the Canadian court acted in the manner it did.

*Id*. (citation omitted, emphasis added).

The *Pickering* court distinguished its previous decision in *Zaitona*, 9 F.3d at 437, upon which the government relied, noting:

> In *Zaitona*, the only explanation offered by the state court for vacating the conviction was so that it might consider a Judicial Recommendation Against Deportation ("JRAD"). *Zaitona*, 9 F.3d at 437. Immediately following the vacation of his conviction, Zaitona pleaded guilty to the identical crime. The only difference between the first and second sentence was the JRAD. *Id*. In *Zaitona*, "[i]t was unimportant to [the Court's] determination that Zaitona's attorney may have originally surrounded his request for the JRAD with language of ineffective assistance of counsel . . . ," because it was apparent from the order of the court and the record that the conviction was vacated solely for immigration reasons. *Id*. Unlike *Zaitona*, in the instant case, the order of the Canadian court is silent on the question of its motivation, referring instead to the Petitioner's request, supporting affidavit, and "hearing." . . . In *Zaitona*, the record provided more than a "reasonable basis" for concluding that the judgment was vacated for immigration reasons. Indeed, the record clearly revealed "substantial evidence that the [] court's action was taken for the sole purpose of relieving Zaitona from deportation." *Zaitona*, 9 F.3d at 437. Here, the record before us lacks the record of the hearing upon which the Canadian judge relied, at least in part, in quashing the conviction.

*Id.* at 267-68.

Noting that the record in *Pickering* contained "no reference to the hearing before the Canadian court, no indication that the BIA had that record in its possession and no indication that it reviewed it in any fashion to determine the rationale behind the decision of that court," this court concluded that the BIA erroneously assumed that the Canadian court adopted the petitioner's motive and, in so doing, also erroneously assumed that the Canadian court ignored the legal basis the petitioner had articulated when he sought to have his conviction quashed – i.e., that pursuant to § 24(1) of the Canadian Charter of Rights and Freedoms, his rights had been violated. *Id*. at 268. The *Pickering* court stated:

> According to the expert testimony provided by the Petitioner, which was undisputed by the government, a Canadian court can quash a conviction under § 24(1) of the Charter only for reasons related to a violation of rights granted Canadian citizens in

the Canadian Charter of Rights and Freedoms. . . .  If the Canadian court acted
pursuant to the legal authority cited and relied upon by the Petitioner, it could not
have acted solely for immigration reasons.  In presuming that the Canadian court
quashed the conviction for immigration reasons, the BIA concluded that the
Canadian court assumed the Petitioner's motives as stated in his affidavit and notice
of appeal, but did not consider the legal authority he cited.

*Id*. at 268 (citations omitted).

We hold that the present case is distinguishable from *Pickering* on the ground that, unlike
the petitioner in *Pickering*, petitioner Sanusi did not raise or argue any colorable legal basis for the
vacation of his conviction.  Rather, in his petition for a writ of *coram nobis*, Sanusi merely asked
for mercy from the harsh immigration consequences of his conviction and asserted his ignorance of
immigration law at the time he entered his criminal plea of guilty.  In this regard, it is well settled
that there is no obligation to advise a criminal defendant of the collateral immigration consequences
of entering a guilty plea. *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002).  Petitioner
has not cited any legal authority to the contrary.  A colorable legal ground for the granting of a writ
of *coram nobis* was not raised in Sanusi's state court petition.  *Clorid*, 182 S.W.3d at 479; *Echols*,
201 S.W.3d at 893.

Thus, although Sanusi's motive is not controlling, *Pickering*, 465 F.3d at 267, the requisite
legal basis is not present in the instant case to effectuate the vacation of Sanusi's conviction for
immigration purposes.  Sanusi's state court petition and the uncontested order of the Arkansas court
with the docket entry – "On 8-11-03, Milton Dejesus, attorney for defendant, filed a petition for writ
of *coram nobis*.  City Attorney had no objection.  Judge granted the motion." – fail to provide the
evidence from which it may be reasonably inferred that the writ of *coram nobis* was granted on any
recognized legal ground.  On this record, the only reasonable inference that can be drawn is that the
conviction was vacated for the sole purpose of relieving Sanusi from deportation.

For these reasons, we deny the petitions for review.