NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0690n.06

No. 10-2079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 28, 2012*

LEONARD GREEN, Clerk

MICHAEL J. HADDAD, )
)
    Petitioner-Appellant, )
) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR THE
) EASTERN DISTRICT OF MICHIGAN
UNITED STATES OF AMERICA, )
) OPINION
    Respondent-Appellee. )
)
_____ )

**Before: COLE and STRANCH, Circuit Judges; CARR, District Judge.***

**JANE B. STRANCH, Circuit Judge.** Petitioner Michael Haddad, a citizen of Syria, pled guilty in 1997 to possessing a controlled substance (LSD), *see* 21 U.S.C. § 844(a). Because of this guilty plea, the government is authorized to deport Haddad. *See* 8 U.S.C. § 1227(a)(2)(B)(i). During the plea process, Haddad believes that he was represented by a court-appointed attorney who did not advise him of the immigration consequences of pleading guilty.

Three years after the government began proceedings in 2004 to remove Haddad—based in part on Haddad's conviction of possessing drugs—Haddad petitioned the district court for a writ of *coram nobis*, arguing that the conviction should be vacated because, among other things, his counsel provided ineffective assistance. The district court denied Haddad's petition.

---

*The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Haddad appeals, contending that his attorney provided ineffective assistance by not advising him that pleading guilty would make him deportable. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Haddad was admitted to the United States in 1991 as a resident alien. He pled guilty to a state and federal offense, resulting in two criminal convictions that make him deportable. In October 1996, he pled guilty to the first offense: stealing/retaining a financial transaction device without consent, a felony under Michigan law, *see* Mich. Comp. Laws § 750.157n. The resulting judgment of conviction was entered in March 1997.

The second offense of possessing LSD occurred in December 1996. While Haddad was entering Canada, a customs agent searched him and found three pieces of paper that tested positive for LSD. In July 1997, he appeared before a magistrate and pled guilty to this offense. The judgment of conviction was entered the same day. He was fined $1000 and ordered to pay a $25 assessment fee. Neither a transcript nor recording of the proceeding exists. (The recording was destroyed in accordance with judicial policy after one year.) Other than the magistrate judge's docket sheet for that day, the only other account of what transpired when Haddad pled guilty to possessing drugs comes from his June 2007 affidavit. In it, Haddad states his belief that he was represented by a court-appointed attorney who, among other things, did not advise him of the immigration consequences of pleading guilty.

The Department of Homeland Security (DHS) began proceedings to remove Haddad in June 2004. They sought to remove him based on the following two grounds, each of which alone would

authorize removing him: he was an alien who had been convicted of (1) a crime involving moral turpitude committed within five years after being admitted for which a sentence of one year or longer may be imposed (the financial-transaction-device offense), and (2) a controlled-substance offense (possessing LSD).

Haddad admitted DHS's allegations and conceded removability at a hearing before an Immigration Judge (IJ) in October 2004. His attorney requested and received an extension of time to apply for cancellation of removal. But his attorney failed to apply for this relief. So in February 2005, the IJ ordered that Haddad be removed from the United States. The IJ denied Haddad's motion to reopen in June 2005, a decision that the Board of Immigration Appeals (BIA) affirmed in January 2006. Haddad appealed to this court, but we ruled in April 2007 that we lacked jurisdiction to consider his petition for review.

In June 2007, Haddad filed the petition for writ of *coram nobis* that lies at the heart of this appeal. He asked the district court to vacate his 1997 conviction for possessing LSD for several reasons, including that he received ineffective assistance of counsel. Specifically, he argued that this attorney never properly advised him of the trial rights, possible defenses, and alternatives to sentencing (such as the discretionary prejudgment probation under 18 U.S.C. § 3607) that he had. Haddad unambiguously declared that he was "not assert[ing] that his counsel was ineffective for failing to advise him about the deportation consequences of his guilty plea." This is understandable because that argument was not yet recognized by courts. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1481, 1484, 1486 (2010).

The magistrate judge recommended that the petition be denied in his October 2007 Report and Recommendation. Regarding Haddad's ineffective-assistance-of-counsel claim, the magistrate judge suggested that it had no merit because attorneys were not obligated, constitutionally or otherwise, to inform their clients that they may be deported if convicted.

The district court adopted the Report and Recommendation and denied the petition in July 2010. By that time, *Padilla* had set forth the rule that attorneys perform deficiently when they do not inform their clients whether their plea carries a risk of deportation. 130 S. Ct. at 1483, 1486. But the district court held that Haddad had not established an ineffective-assistance claim based on that rule for five reasons: (1) laches bars the claim, (2) Haddad likely could not show that an attorney's failure to discuss the immigration consequences of pleading guilty "would violate the professional norms that prevailed in 1997," (3) *Padilla*'s rule probably didn't apply retroactively to old convictions under collateral attack, (4) Haddad likely could not demonstrate the prejudice necessary for an ineffective-assistance claim because his state conviction for stealing/retaining a financial transaction device makes him deportable even without his conviction for possessing drugs, and (5) a writ of *coram nobis* does not eliminate a conviction for immigration purposes when the conviction is vacated "for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal

proceedings."[1] *Haddad v. United States*, No. 07-12540, 2010 WL 2884645, at\*5-6 (E.D. Mich. July 20, 2010) (quoting *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir. 2006)).

On appeal, Haddad argues that his attorney provided ineffective assistance by failing to advise him of the immigration consequences of pleading guilty.

## II. ANALYSIS

### A.      Standard of review

We review a district court's decision denying a "writ of *coram nobis* de novo, but uphold the court's factual findings unless they are clearly erroneous." *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012).

### B.      Is Haddad entitled to the writ of *coram nobis*?

*Coram nobis* is an extraordinary writ used to vacate a federal sentence or conviction "only 'when a § 2255 motion is unavailable—generally when the petitioner has served his sentence completely and thus is no longer in custody.'" *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir.

---

[1]The determination below is correct but not on the bases referenced in reasons (4) and (5). As explained more fully below, the prejudice prong of an ineffective-assistance claim in the context of a guilty plea requires Haddad to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). But the question underlying the analysis in reason (4)—whether Haddad would still have been deportable even without his conviction for possessing drugs because of his other state conviction—though germane to the case is not directed to prejudice in the context of a guilty plea. The flaw in reason (5) is that when a conviction is vacated because the Sixth Amendment right to counsel was violated, that conviction would not be vacated "for reasons solely related to rehabilitation or to avoid adverse immigration hardships," *Pickering*, 465 F.3d at 266. Instead, that conviction would be vacated because counsel's errors were so grave that there is a reasonable probability that the result of the proceeding would have been different absent those errors, *Strickland v. Washington*, 466 U.S. 668, 686-87, 691-92, 694 (1984). This is the very type of "procedural or substantive defect in the underlying criminal proceedings" that does eliminate a conviction for immigration purposes under *Pickering*. 465 F.3d at 266.

2001) (quoting *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996)). The Supreme Court has limited the writ's use to "circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). For this court to grant the writ, a petitioner must "demonstrate[] a factual error that was unknown at the time of trial and that is of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Pilla*, 668 F.3d at 372 (internal quotation marks omitted).

Haddad contends that he is entitled to the writ because he received ineffective assistance of counsel during the plea process. Specifically, he argues that his attorney provided ineffective assistance by not advising him that pleading guilty to possessing LSD would authorize the government to deport him. This argument became viable after *Padilla* set forth the rule that attorneys perform deficiently when they do not inform their clients whether their plea carries a risk of deportation. 130 S. Ct. at 1483, 1486. Even assuming that Haddad did not waive this argument, that laches does not bar it, and that *Padilla*'s rule retroactively applies to Haddad's plea proceeding, he cannot establish the prejudice necessary for an ineffective-assistance claim.

To prove an ineffective-assistance claim, Haddad must show that his attorney performed deficiently and that he was prejudiced by the attorney's error. *See Strickland*, 466 U.S. at 687. To establish prejudice, Haddad "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. This "is never an easy task." *Padilla*, 130 S. Ct. at 1485. *Strickland* imposes a "high bar" that "must be applied with scrupulous care lest intrusive post-trial inquiry threaten the integrity of the

very adversary process the right to counsel is meant to serve." *Premo v. Moore*, 131 S. Ct. 733, 739-40 (2011) (internal quotation marks omitted). Moreover,

> [h]indsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . . There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

*Id.* at 745-46.

Haddad therefore cannot establish prejudice merely by stating now that he would have gone to trial then if he had been told that his plea would authorize the government to deport him. *Pilla*, 668 F.3d at 373. "The test is objective, not subjective": to prevail, "'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla*, 130 S. Ct. at 1485). This in turn requires a "prediction of the likely outcome at trial." *Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006); *see Pilla*, 668 F.3d at 373 (analyzing Pilla's chance of success at trial to determine whether she was prejudiced). In many cases, "this inquiry will be dispositive." *Maples v. Stegall*, 340 F.3d 433, 440 (6th Cir. 2003).

*Pilla* is such a case. Pilla professed that she would have gone to trial if her attorney had correctly told her that pleading guilty would authorize the government to deport her. *Pilla*, 668 F.3d at 373. But this court rejected that profession as inadequate, instead reasoning that she "faced overwhelming evidence of her guilt, . . . had no rational defense, would have been convicted, and would have faced a longer term of incarceration. . . . And had Pilla been convicted after trial, she

would have been just as removable as she was after her guilty plea." *Id.* Accordingly, "no rational defendant in Pilla's position would have proceeded to trial." *Id.*

The same logic applies in the present case. Like Pilla, Haddad states now that he would have gone to trial if his attorney had advised him that pleading guilty would make him deportable. But this statement is not enough to establish prejudice. *Id.* And the evidence against Haddad is strong. He was caught red-handed: while Haddad was entering Canada from the United States, a customs agent searched Haddad and found three pieces of paper that tested positive for LSD.

Haddad also has no rational defense to the crime of possessing drugs. Before the district court, he asserted that he would have raised the following three possible defenses: the search or seizure was illegal, he did not possess the substances found during the search, and the government could not prove that those substances were actually illegal drugs. But he offers no reason to believe that these defenses had any chance of success, let alone that they were rational. And there are good reasons for discounting each defense, which we address in turn. The Supreme Court has held that routine border searches of persons entering the country do not require reasonable suspicion, probable cause, or a warrant. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985); *see United States v. Flores-Montano*, 541 U.S. 149, 152-55 (2004). And although this court has not specifically decided the question whether that doctrine extends to border searches of persons *leaving* the country, Sixth Circuit precedent suggests that the doctrine does. *See United States v. Boumelhem*, 339 F.3d 414, 420-423 (6th Cir. 2003) (holding that the doctrine extends to searches of articles leaving the country). The language *Boumelhem* used in a section heading supports this point: "The Border Search Exception Applies to *Persons* and Articles Leaving the Country, and Not Only to Those

Entering the Country." *Id.* at 420 (emphasis added); *accord United States v. Humphries*, 308 F. App'x 892, 896 (6th Cir. 2009) (citing *Boumelhem* for the proposition that "[w]e have extended the rational underlying the suspicionless search of persons and effects entering the country to situations where persons or articles attempt to exit the country as well" (emphasis removed)). The last two defenses—that Haddad did not possess the substances found during the search and that the government could not prove that those substances were illegal drugs—are frivolous because Haddad was caught personally possessing a substance that tested positive for LSD, which is a controlled substance under federal law, *see* 21 U.S.C. §§ 802(6), 812 Schedule I(c)(9). The magistrate's Report and Recommendation, which the district court adopted, implicitly reached the same conclusion about the defenses that Haddad asserts he would have raised—namely, that they are not realistic.

In addition to the strong evidence against him and his lack of viable defenses, another weight tipping the scale in favor of Haddad pleading guilty is the benefit he received by doing so. He received the minimum fine ($1000) and no prison time. Had he gone to trial and been convicted, as seems highly likely, he would be just as deportable as he was after pleading guilty and he would have faced imprisonment for up to one year or a higher fine, or both, 21 U.S.C. § 844(a).

The only counterweight Haddad points to in support of his claim that he would have insisted on going to trial is the after-the-fact allegation in his affidavit; in other words, all Haddad offers to support his claim is the claim itself. Not only is that claim insufficient to show prejudice because the test is objective, *see Pilla*, 668 F.3d at 373, but the entire record goes against it. Like Pilla, Haddad faced strong evidence of his guilt, and if he had gone to trial, he had no rational defense, would have been convicted, would have faced time in prison, and would have been deportable

anyway. *See id.* "[N]o rational defendant in [Haddad's] position would have proceeded to trial."

*Id.* Haddad therefore cannot show the prejudice necessary for an ineffective-assistance claim. This

conclusion is buttressed by the fact that Haddad does not even argue on appeal that he satisfies the

prejudice prong.

Because Haddad's ineffective-assistance claim fails, he cannot show that his attorney's

advice was a "fundamentally unjust" error that "probably altered the outcome of the challenged

proceeding, as required for a writ of *coram nobis*." *Pilla*, 668 F.3d at 372-73 (ellipses omitted).

### III.  CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.