NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0706n.06

Case No. 14-2023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 20, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LUVIQ PLUMAJ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RAYMOND BOOKER, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, ROGERS, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Luviq Plumaj appeals the district court's denial of an ineffective-assistance-of-counsel (IAC) claim presented in Plumaj's federal habeas petition. Plumaj argues that his attorney's grossly misleading advice about Plumaj's eligibility for parole and likely release date induced Plumaj's guilty plea and therefore violated Plumaj's Sixth Amendment right to counsel. For the reasons stated below, we affirm the denial of the habeas petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2007, Plumaj was charged in two separate cases in Michigan's Wayne County Circuit Court. In Case No. 07-005810, he was charged with Manslaughter with a Motor Vehicle (Mich. Comp. Laws § 750.321E) and Failure to Stop at the Scene of a Fatal Accident (Mich. Comp.

Laws § 257.617(3)). In Case No. 07-009020, he was charged with first degree premeditated murder (Mich. Comp. Laws § 750.316A), assault with intent to commit murder (Mich. Comp. Laws § 750.83), and possession of a firearm during a felony (Mich. Comp. Laws § 750.227b).

Plumaj pleaded guilty to second degree murder in Case No. 07-009020 in exchange for a sentence agreement of 25.5 to 35 years and a dismissal of the assault and possession charges. He also pleaded no contest to each count in Case No. 07-005810 in exchange for a sentence agreement of 10 to 15 years to run concurrently to the sentence in 07-009020. Plumaj was sentenced to concurrent sentences totaling 25.5 to 38.25 years.

With the aid of new counsel, Plumaj filed a motion to withdraw his guilty plea and obtain an evidentiary hearing. In his motion, Plumaj alleged, *inter alia*, a violation of his Sixth Amendment right to effective assistance of counsel. In support of his motion, Plumaj attached an affidavit from himself and another affidavit from his appellate counsel. Both affidavits stated that Plumaj's trial counsel, Anthony Chambers, told Plumaj that if he pleaded guilty he would be eligible for parole at the "low end of the guidelines" (i.e., after 180 months) and that he would likely be released as soon as he became eligible.[1] Plumaj claimed that it was Chambers' representation regarding the likelihood of release after 180 months that induced Plumaj to plead guilty even though he was innocent of the murder charge.

In 2008, the state trial court granted Plumaj's motion to withdraw his pleas in both cases because the trial court failed to place Plumaj under oath before he entered his pleas. The trial court did not rule on Plumaj's IAC claim or grant an evidentiary hearing to develop that claim. The Michigan Court of Appeals reversed, holding that the failure to place Plumaj under oath did not automatically invalidate the pleas. *People v. Plumaj*, 773 N.W.2d 763, 767 (Mich. Ct. App.

---

[1] Appellate counsel's affidavit was based on a conversation between appellate counsel and Chambers.

2009). The matter was remanded to the state trial court for a factual determination of whether Plumaj's pleas were "understandingly, knowingly, voluntarily, and accurately made." *Id*.

On remand, the trial court found that the pleas were "full, fair, voluntary, and knowingly made and that the plea[s] [were] in all respects accurate." The motion for an evidentiary hearing was denied. The Michigan Court of Appeals denied Plumaj's application for leave to appeal "for lack of merit in the grounds presented." The Michigan Supreme Court also denied leave to appeal.

In 2011, Plumaj filed a federal habeas petition. The district court denied the petition and dismissed it with prejudice. Its key ruling was that, "at the time the state courts rejected Plumaj's arguments, there was no clearly established Supreme Court case that recognized that bad advice about parole eligibility would render a plea involuntary or provide the basis for an ineffective-assistance-of-counsel claim." The district court ruled that *Padilla v. Kentucky*, 559 U.S. 356 (2010), stood for the proposition that "bad advice about collateral consequences of a conviction can invalidate a guilty plea," but that since *Padilla* was not retroactive it could not support Plumaj's petition. Subsequently, the district court granted Plumaj a certificate of appealability as to whether the incorrect advice could have rendered his guilty plea involuntary or satisfied the relevant test for IAC.

Plumaj then filed a motion to amend the district court's judgment on the grounds that, since his case was pending on appeal to the Michigan Supreme Court at the time of the *Padilla* decision, a lack of retroactivity did not bar his ability to rely on *Padilla* to obtain relief. The district court agreed that it had erred by addressing the issue of retroactivity, but ruled that since *Padilla*'s holding was limited to the "unique" collateral consequence of deportation, *Padilla* did not clearly establish a similar right to accurate advice concerning parole.

**STANDARD OF REVIEW**

We review the district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). Our review of the Michigan state decisions in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which specifies that,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**DISCUSSION**

If a defendant's guilty plea is not voluntarily, intelligently, and knowingly made, the plea violates the Due Process Clause and is therefore void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The constitutional rights at stake in a guilty plea—chief among them the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—are distinct from the Sixth Amendment right to effective assistance of counsel. *Cf. id.* But a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent nature of the plea by demonstrating that the advice he received from counsel was not within the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 56–59 (1985). Because *Strickland* provides the general standard for challenges based on the Sixth Amendment right to effective assistance of counsel,

Plumaj's challenges under the Due Process Clause and the Sixth Amendment collapse into a single analytical framework.

The *Strickland* framework has two prongs. First, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687–88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the context of a *Strickland* challenge to a guilty plea, the second prong requires a defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59.

## I.    The Relevant Decision for Purposes of AEDPA Deference

Plumaj argues that because the trial court "did not explicitly rule on the ineffective assistance of counsel claim," AEDPA deference does not apply and this Court should review his *Strickland* claim de novo. The Warden argues that the Michigan Court of Appeals adjudicated the decision on the merits, which would make that decision the relevant decision for AEDPA deference purposes. Both arguments are flawed.

The Michigan Court of Appeals denied Plumaj's application for leave to appeal. Notwithstanding the fact that the denial refers to a "lack of merit in the grounds presented," the Supreme Court has held that "the discretionary denial of review . . . is not even a 'judgment'" for purposes of identifying a state court judgment on the merits of a habeas claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

On the other hand, the trial court's omission of a separate and explicit ruling on the ineffective-assistance-of-counsel claim is readily explained by the fact that, as discussed above,

the ineffective-assistance-of-counsel claim was part of a broader challenge to the validity of the guilty plea. The trial court found that the plea was "full, fair, voluntary, knowingly made and accurate in all respects," which implicitly rejects a claim that Plumaj was prejudiced by the ineffective assistance of counsel. The trial court also explicitly discussed the merits of Plumaj's ineffective-assistance-of-counsel claim in the course of its finding:

> I believe a reviewing court should have a very dim view of what a Defendant says his lawyer promised him, but . . . even his recitation of what the lawyer promised was less than persuasive in terms of the outcome of this case; that the Defendant did derive an enormous benefit from the plea agreement to the second degree murder along with the sentence agreement.

Although this passage does not place the court's analysis within the *Strickland* framework, it reflects an unmistakable merits determination that Plumaj was not prejudiced by any faulty parole advice he received from counsel. Therefore, AEDPA deference applies, and this court cannot apply a standard of de novo review to the prejudice prong of the *Strickland* analysis.[2]

## II. Prejudice Under *Strickland*

The unrebutted record in this case,[3] as indicated by affidavits from Plumaj and his appellate counsel, suggests that Plumaj's trial counsel, Chambers, told Plumaj that if he pleaded guilty he would be eligible for parole after 180 months and that he would likely be released at that time. In reality, Plumaj would not be eligible for parole until he had served his minimum sentence, *see* Mich. Comp. Laws §§ 791.233(b), 791.234(1), which meant Plumaj was obligated to serve at least 306 months—a seventy percent increase from the figure provided by Chambers.

---

[2] This Circuit continues to adhere to the rule that "[w]hen a state court relie[s] only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court." *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012). Since our analysis of the prejudice prong is dispositive, however, there is no need for us to consider *Rayner*'s implications for the performance prong of *Strickland* in this appeal.

[3] The Warden did not avail himself of the opportunity to obtain an affidavit from Chambers rebutting Plumaj's allegations.

In *Lockhart*, the Supreme Court based its holding that the petitioner failed to demonstrate prejudice by noting that, "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." 474 U.S. at 60. The Court also noted a failure to allege "special circumstances that might support the conclusion that [petitioner] placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." *Id*. Here, Plumaj has explicitly alleged that the grossly misleading parole advice of counsel was the decisive factor in his decision to plead guilty. He has further alleged that he had valid defenses which he would have raised at trial, that he waited until the day of trial to accept the plea deal, and that he had rejected a plea deal that had been offered earlier on the same day.[4] These are all circumstances that support a conclusion that counsel's advice about parole eligibility weighed heavily in Plumaj's decision-making process.

The state trial court dismissed the possibility of prejudice by finding that, "the Defendant did derive an enormous benefit from the plea agreement to the second degree murder along with the sentence agreement." This is clearly a reference to the fact that at the time of Plumaj's plea, a charge of first degree murder carried a penalty of life imprisonment without parole. *See* Mich. Comp. Laws §§ 750.316(1) (2007), 791.234(6)(a) (2007). In its denial of Plumaj's federal habeas petition, the district court ruled that the state court's "finding of no prejudice [was] not unreasonable in itself."

But under clearly established federal law, the question is not whether the petitioner would have been better off with a plea deal than with a jury conviction, but whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

---

[4] None of the allegations in regard to whether Plumaj was prejudiced by trial counsel's misadvice, however, was corroborated either in his appellate counsel's affidavit or by Chambers.

have insisted on going to trial." *Lockhart*, 474 U.S. at 59. "The test is objective, not subjective." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). To obtain relief, Plumaj "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain. *See Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012).

Plumaj argues, and the Warden concedes, that there are no eyewitnesses to the crime and that Shannon Bommarito, the actual shooter, has given conflicting statements to police about Plumaj's role in the crime. The Warden argues that the State could have met its burden solely through circumstantial evidence and that "it could easily be inferred that Bommarito was lying in her initial statements to police because she feared Plumaj." While both of these arguments are well-founded, they are also somewhat beside the point. The fact that the available evidence might have been sufficient to sustain a conviction of Plumaj does not mean that he lacked a viable defense or that he lacked confidence that he could prevail at trial with that defense. Arguably, it would be rational for a defendant to conclude that the lack of an eyewitness and the credibility problems associated with the key government witness would make the risk of a trial worthwhile.

Nevertheless, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant

has not satisfied that standard." *Id*. Under the doubly deferential standard created by the interaction of § 2254(d) and *Strickland*, we cannot say that the state court's ruling on prejudice was contrary to or an unreasonable application of federal law. In particular, the trial court both expressed concern regarding the credibility of defendant's allegations[5] and explained that Plumaj had not persuaded the court that the lawyer's misinformation prejudiced the outcome of his case because Plumaj had "derive[d] an enormous benefit from the plea agreement." Though the trial court's finding of no prejudice may well have been incorrect, it was not unreasonable; the Supreme Court has never held that the benefits of a plea agreement alone cannot suffice to answer the prejudice inquiry, namely whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Lockhart*, 474 U.S. at 59. Therefore, Plumaj's ineffective-assistance-of-counsel claim was properly denied.[6]

AFFIRMED.

---

[5] The court stated, "I believe a reviewing court should have a *very dim view of what a Defendant says* his lawyer promised him." (emphasis added).

[6] Because Plumaj has failed to satisfy his burden for the prejudice prong of Strickland, we decline to address the question of whether Plumaj's claims of errant parole advice can satisfy the performance prong of Strickland. *Cf. Lockhart*, 474 U.S. at 60.