Saleh v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term 2006

Argued: (April 30, 2007   Decided: July 17, 2007
            Amended: August 3, 2007)

Docket No. 05-5909-ag

-----------------------------------------------------X

YASSER NASSER SALEH,

        Petitioner,

   - against -

ALBERTO GONZALES, Attorney General of the United States,

        Respondent.

-----------------------------------------------------X

  Before:  FEINBERG, SOTOMAYOR, and HALL, Circuit Judges.

  Petitioner seeks review of a decision of the Board of Immigration Appeals affirming decisions of the Immigration Judge denying his motion to terminate removal proceedings, finding him removable, and denying his application for relief.

  Petition for review denied.

      ERIC W. SCHULTZ, Sacks, Kolken & Schultz, Buffalo, New York, for Petitioner.

      SHANE CARGO, Assistant United States Attorney, (Michael J. Garcia, United States Attorney, Sara L. Shudofsky, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, for Respondent.

FEINBERG, Circuit Judge:

Yasser Nasser Saleh, a lawful permanent resident of the United States, was charged as removable under section 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(i). The basis of the charge was his conviction in state court of receiving stolen property, which is a removable offense, i.e., a "crime involving moral turpitude" ("CIMT") for which a sentence of one year or longer could have been imposed. In an effort to escape the adverse immigration consequences of that conviction, Saleh thereafter obtained an amendment of the judgment so that he instead stood convicted of petty theft, which is not a removable offense.

In this petition, Saleh seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming decisions of the Immigration Judge ("IJ") (A) rejecting Saleh's argument that he no longer stands convicted of a removable offense and therefore denying his motion to terminate his removal proceedings and (B) finding Saleh removable as charged and denying his application for relief from removal. In re Saleh, No. A41 982 414 (B.I.A. Oct. 4, 2005), aff'g No. A41 982 414 (Immig. Ct. Buffalo Apr. 22, 2004).

In reviewing these decisions, the principal question before us is whether the BIA erred in concluding that Saleh remains "convicted" of a removable offense for federal immigration

-2-

purposes even though the state court amended its judgment of conviction to effectively expunge his conviction of a removable offense under state law. For the reasons set forth below, we hold that the BIA did not err because the amendment was secured solely to aid Saleh in avoiding immigration consequences and was not based on any procedural or substantive defect in the original conviction. We therefore deny the petition.

## I. BACKGROUND

Saleh, a native and citizen of Yemen, was admitted to the United States as a lawful permanent resident in 1990. In 1993, Saleh was convicted in California state court, following his plea of nolo contendere, of receiving stolen property in violation of section 496(a) of the California Penal Code.[1] The offense carries a maximum sentence of one-year imprisonment, see Cal. Pen. Code § 496(a), although the court imposed a lower

---

[1] The statute provides, in pertinent part, that "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year." Cal. Pen. Code § 496(a). Saleh was convicted under section 496.1 of the California Penal Code. That provision has since been recodified as section 496(a). Throughout, this opinion references the provision at its current location in section 496(a).

sentence.[2] In July 2001, the Immigration and Naturalization Service ("INS") commenced removal proceedings,[3] charging that Saleh was removable under 8 U.S.C. § 1227(a)(2)(A)(i) because his 1993 crime qualifies as a CIMT, committed within 10 years after the date of admission, for which a sentence of one year or longer could have been imposed.

Subsequently, for the announced purpose of escaping adverse immigration consequences, Saleh moved in California state court for an amendment of the judgment convicting him of receiving stolen property, effective nunc pro tunc, so that he would instead stand convicted of petty theft in violation of section 488 of the California Penal Code. Because this is not a crime for which a sentence of one year or longer could have been imposed, it is not a removable offense. In a declaration accompanying Saleh's motion, his counsel expressly referred to the immigration consequences of Saleh's original conviction,

---

[2] This was neither Saleh's first nor last brush with the law. He had already been convicted in 1992 of unlawfully discharging a firearm and driving while intoxicated, and was thereafter convicted in 1997 of criminal mischief, in 1998 of driving while intoxicated, and in 2000 of driving while intoxicated.

[3] On March 1, 2003, the INS was reconstituted into two agencies, the Bureau of Immigration and Customs Enforcement and the U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. See Jian Hui Shao v. Bd. of Immigration Appeals, 465 F.3d 497, 499 n.3 (2d Cir. 2006) Because the proceedings in this case began before that date, we will continue to refer to the agency as the "INS."

-4-

stating that "the alternative disposition of petty theft, which carries a six month maximum sentence would not have the adverse immigration consequences."  Moreover, no evidence or argument presented to that court identified any substantive or procedural defects in Saleh's conviction.  The California court granted the motion.

Saleh thereafter asked the IJ to terminate the agency's removal proceedings, arguing that petty theft is not a removable offense.  The IJ denied the motion, reasoning that, despite the California court's amendment to the judgment of conviction, Saleh remained "convicted" of receiving stolen property, a removable offense for federal immigration purposes, because the amendment was not "based on any showing of innocence or any suggestion that the conviction had been improperly obtained."  Instead, the IJ found that the conviction was amended "solely for the purpose of circumventing the immigration laws of the United States."[4]

After the IJ denied Saleh's motion to terminate his removal proceedings and the BIA declined to entertain his interlocutory

---

[4] Although the Government bears the burden of proving, by clear and convincing evidence, that Saleh is removable, see 8 U.S.C. § 1229a(c)(3)(A); Zerrei v. Gonzales, 471 F.3d 342, 345 (2d Cir. 2006) (per curiam); see also Pickering v. Gonzales, 465 F.3d 263, 268-69 (6th Cir. 2006); Cruz-Garza v. Ashcroft, 396 F.3d 1125, 1130 (10th Cir. 2005), Saleh did not dispute before the IJ or the BIA or in his brief in this appeal that the California court amended the judgment of conviction to help him avoid immigration hardships, so we deem any argument to the contrary waived.  See Yueqing Zhang v. Gonzales, 426 F.3d 540, 542 n.1 (2d Cir. 2005).

appeal of that decision, Saleh contested removability and sought relief from removal. He initially filed a Form I-191, a prerequisite to obtaining a waiver of deportation under former section 212(c) of the INA. Subsequently, however, Saleh abandoned his application for 212(c) relief and instead filed a motion to substitute an application for cancellation of removal.[5] The IJ found Saleh removable and denied his application for cancellation of removal as untimely.

The BIA adopted and affirmed the IJ's decision and dismissed the appeal. Relying on its prior decision in Matter of Pickering, 23 I. & N. Dec. 621 (BIA 2003), the Board agreed with the IJ that Saleh remained "convicted" of a removable offense for federal immigration purposes because the amendment of the judgment of conviction was not based on "any substantive or procedural defect in the underlying criminal proceedings," and Saleh was therefore removable. Saleh filed a timely petition for review.

## II. ANALYSIS

In his petition, Saleh argues that the BIA erred in finding him removable and in denying his application for cancellation of removal. In support, he argues principally that (A) the BIA's

---

[5] Saleh abandoned his 212(c) application because, after filing the Form I-191, his counsel determined that Saleh had also been convicted of a firearms offense, see supra note 2, which rendered him ineligible for 212(c) relief.

interpretation of the INA, under which he remains convicted of a removable offense, (1) is not entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) and (2) violates 28 U.S.C. § 1738, which obliges federal courts to give full faith and credit to state acts, records, and judicial proceedings; and (B) the BIA erroneously concluded that he was ineligible for cancellation of removal. We reject each of his arguments.

A. Did the BIA err in concluding that Saleh remains convicted of a removable offense for federal immigration purposes?

1. Is the BIA's interpretation of the INA at issue in this case entitled to deference under <u>Chevron</u>?

The BIA determined that Saleh was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), which makes removable any alien who "(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status . . .) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed." The BIA properly concluded that Saleh's original conviction for receiving stolen property, in violation of Cal. Pen. Code § 496(a), satisfies these requirements. See Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000). Although Saleh thus stood convicted of a removable offense under state law at one time, he subsequently secured an amendment of the State's judgment in an effort to avoid adverse

-7-

immigration consequences and not because of any procedural or substantive defect in the original conviction.  Therefore, the issue before us is whether, under these circumstances, Saleh remains "convicted" of a removable offense for federal immigration purposes, viz. within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i) and the INA's definition of "conviction," 8 U.S.C. § 1101(a)(48)(A).[6]

This is a question of federal statutory interpretation.  We have previously observed that "[w]hether one has been 'convicted' within the language of [federal] statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State."  United States v. Campbell, 167 F.3d 94, 97 (2d Cir. 1999) (alternations in original, citation omitted); cf. Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 119-20 (1983) (holding that in "the absence of a plain indication to the contrary, . . . it is to be assumed when Congress enacts a statute that it does

---

[6] That provision defines "conviction" as

[A] formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where--(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

not intend to make its application dependent on state law" (alterations in original, citation omitted)).

We review the BIA's interpretation of the INA under the familiar two-step analysis set forth in Chevron, 467 U.S. 837. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999). First, we determine whether the provision in question is ambiguous; "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute," and thus entitled to deference. Id. at 843.

Turning to the first step of this analysis, we conclude that Congress' intent on the treatment of vacated or amended convictions under 8 U.S.C. § 1101(a)(48)(A) is ambiguous. Saleh was deemed removable because, inter alia, he is an alien who "is convicted of a crime involving moral turpitude," 8 U.S.C. § 1227(a)(2)(A)(i), and conviction is defined, in pertinent part, as "a formal judgment of guilt of the alien entered by a court," 8 U.S.C. § 1101(a)(48)(A). This language permits a spectrum of possible interpretations. On one end of the spectrum, Congress may have intended that where an alien receives any type of post-

conviction relief -- either through an amendment nunc pro tunc, an expungement, or some other remedy -- the immigration law should treat the conviction as if it never occurred, regardless of the reason for the relief. Under this view, the expungement means that the defendant no longer "is convicted of [the original] crime" and there is no longer any "formal judgment of guilt of the alien entered by a court." On the other end of the spectrum, Congress may have intended that no post-conviction relief whatsoever should have any effect on whether an alien stands "convicted" of a removable offense, again, regardless of the reason for the relief. Or, Congress may have intended some middle position: that certain types of post-conviction relief would affect an alien's "conviction" status under the INA, but others would not, depending upon the reason for the relief. Neither the relevant statutory language nor legislative history allows us to conclude that any of these interpretations represents Congress' unambiguous intent. See, e.g., Pinho v. Gonzales, 432 F.3d 193, 206 (3d Cir. 2005); Murillo-Espinoza v. INS, 261 F.3d 771, 774 (9th Cir. 2001).

Accordingly, we turn to Chevron's second step, which directs us to consider whether the BIA adopted "a permissible construction of the statute." Chevron, 467 U.S. at 843. In making this assessment, "[i]t is not necessary that we conclude that the agency's interpretation of the statute is the only

-10-

permissible interpretation, nor that we believe it to be the best interpretation of the statute." Skubel v. Fuoroli, 113 F.3d 330, 336 (2d Cir. 1997) (citing Chevron, 467 U.S. at 843 n.11). Rather, to affirm the BIA's determination, we need only conclude that the agency's interpretation is "'rational and consistent with the statute.'" Protection & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119, 124 (2d Cir. 2006) (quoting Sullivan v. Everhart, 494 U.S. 83, 89 (1990)).

The BIA has adopted an interpretation of 8 U.S.C. § 1101(a)(48)(A) that distinguishes between convictions vacated on the merits, which the BIA does not treat as "convictions" within the meaning of the provision, and convictions vacated for other reasons, including to avoid immigration hardships, which the BIA continues to treat as "convictions." Because Saleh's conviction fell into the latter category, the BIA concluded that the nunc pro tunc amendment did not affect his conviction status for removability purposes. For reasons to be discussed, we reject Saleh's contention that the interpretation is unreasonable.[7]

Over the last 20 years, there has been a consistent broadening of the meaning of "conviction" in the INA. Until 1996, the INA did not contain a statutory definition of

_____

[7] Although Saleh claims that the agency erred as a matter of law in reaching its decision, we will construe his argument as urging that the BIA's interpretation was unreasonable.

-11-

"conviction," and for most of that time, the BIA generally took the position that an alien whose conviction is vacated or expunged under state law no longer stood convicted of a removable offense for federal immigration purposes. See Matter of Ozkok, 19 I. & N. Dec. 546, 550-52 (BIA 1988). In 1988, the BIA acknowledged, albeit in a somewhat different context from the instant case, that its own prior approach was unduly deferential to state definitions of conviction and had thus frustrated congressional intent: "[F]orm has been placed over substance, and aliens who are clearly guilty of criminal behavior and whom Congress intended to be considered 'convicted' have been permitted to escape the immigration consequences normally attendant upon a conviction." Id. at 551. Accordingly, the BIA attempted in Ozkok to remedy the problem, adopting a broader test for determining whether a conviction existed for federal immigration purposes.

But Congress was of the opinion that the BIA had not gone far enough. See Francis v. Gonzales, 442 F.3d 131, 140 (2d Cir. 2006) (noting that "Congress subsequently indicated its dissatisfaction with the Ozkok test when it amended the INA to change the definition of conviction in 1996"). Congress therefore codified, for the first time, a definition of the term "conviction" in the INA. See 8 U.S.C. § 1101(a)(48)(A) (1996); see also Francis, 442 F.3d at 140. This definition was

-12-

specifically intended to broaden the definition of "conviction" under the INA that had been previously used by the BIA. See Francis, 442 F.3d at 139 (noting that "[t]he applicable definition of 'conviction' was narrower [prior to Congress' intervention] than it is today"). In particular, Congress expanded the Ozkok definition by including convictions where the adjudication of guilt was deferred. As the Conference Report on the amendments explained, "there exist[s] in the various states a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction." H.R. Conf. Rep. No. 104-828 at 224.

Interpreting the new definition, the BIA identified two primary aims that it believed Congress sought to accomplish: to focus the conviction inquiry on the "original determination of guilt" and to "implement a uniform federal approach." Matter of Roldan, 22 I. & N. Dec. 512, 521-22 (BIA 1999). Relying on these rationales, the BIA, in a series of cases culminating in Matter of Pickering, 23 I. & N. Dec. 621 (BIA 2003), reversed on other grounds, Pickering v. Gonzales, 465 F.3d 263 (6th Cir. 2006), further expanded the definition of conviction beyond the particular procedural mechanism considered by Congress in its

1996 amendments to the INA. In <u>Pickering</u>, the BIA concluded that Congress objected generally to many state actions allowing aliens to "escape the immigration consequences normally attendant upon a conviction," H.R. Conf. Rep. No. 104-828 at 224, and that Congress did not intend to allow an alien to escape those consequences by means of a state vacatur that was not on the merits. <u>Pickering</u> gave effect to this objective by holding that the federal immigration consequences of all post-conviction relief will be determined by considering the State court's motivation in granting the relief, e.g., avoiding immigration hardships, recognizing the defendant's rehabilitation, or a substantive or procedural defect in the predicate conviction. Specifically, the BIA held that

> [T]here is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships. Thus, if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a "conviction" within the meaning of section 101(a)(48)(A) [8 U.S.C. § 1101(a)(48)(A)]. If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains "convicted" for immigration purposes.

Id. at 624.

Relying in part on this reasoning, the BIA in the appeal now before us concluded that Saleh remained convicted of the original removable offense because the amendment to Saleh's judgment of

-14-

conviction was obtained solely to avoid "immigration hardships" and not to remedy a procedural or substantive defect in the underlying proceedings.

The BIA's interpretation in both <u>Pickering</u> and the instant case is reasonable. For one thing, the interpretation is entirely consistent with Congress' intent in enacting the 1996 amendments to broaden the definition of conviction and advances the two purposes earlier identified by the BIA: it focuses on the original attachment of guilt (which only a vacatur based on some procedural or substantive defect would call into question) and imposes uniformity on the enforcement of immigration laws. Second, from a practical perspective, while state convictions are a useful way for the federal government to identify individuals who, because of their criminal history, may be appropriate for removal, there will still remain individuals who are guilty of "morally turpitudinous" conduct, see Michel, 206 F.3d at 263, and therefore suitable for removal even though they do not have a still-standing conviction for a removable offense under state law. Cf. Dickerson, 460 U.S. at 120 (noting that state convictions "provide a convenient, although somewhat inexact, way of identifying 'especially risky people'" and that "[t]here is no inconsistency in the refusal of Congress to be bound by postconviction state actions . . . that vary widely from State to State and that provide less than positive assurance that the

person in question no longer poses an unacceptable risk of dangerousness." (internal citations omitted)). Under <u>Pickering</u>, these individuals will remain removable, as Congress intended.

Particularly as applied to post-conviction relief granted to aid the defendant in avoiding immigration hardship, we think the BIA's position eminently reasonable: When a conviction is amended nunc pro tunc solely to enable a defendant to avoid immigration consequences, in contrast to an amendment or vacatur on the merits, there is no reason to conclude that the alien is any less suitable for removal.[8]

For this reason, we find particularly instructive the settled law of our sister circuits, which holds that the BIA has reasonably concluded that an alien remains convicted of a removable offense for federal immigration purposes when a state vacates the predicate a conviction pursuant to a rehabilitative statute. See, e.g., Pickering, 465 F.3d at 266; Alim v. Gonzales, 446 F.3d 1239, 1249-50 (11th Cir. 2006); Pinho, 432

---

[8] We note that we have already embraced, in a slightly different context, approximately the BIA's standard in <u>Pickering</u>. In <u>Campbell</u>, we held that the district court could apply a sentencing enhancement called for by federal law for a vacated state aggravated felony conviction because "[defendant's] conviction was not reversed, and the vacatur order was not based on any showing of innocence or on any suggestion that the conviction had been improperly obtained." 167 F.3d at 98. Although <u>Campbell</u> is not controlling in this case, we continue to believe that this standard, which the BIA has substantially adopted and applied to the removal context in <u>Pickering</u>, is consistent with congressional intent.

-16-

F.3d at 195; Ramos v. Gonzales, 414 F.3d 800, 805-06 (7th Cir. 2005); Cruz-Garza, 396 F.3d at 1129; Resendiz-Alcaraz v. Ashcroft, 383 F.3d 1262, 1268-71 (11th Cir. 2004); Murillo-Espinoza, 261 F.3d at 774; Herrera-Inirio v. INS, 208 F.3d 299, 305 (1st Cir. 2000). Saleh attempts to distinguish away this body of law by arguing that his vacatur, by contrast, had absolutely nothing to do with rehabilitation. We agree, of course, but his argument proves too much. It would make little sense for federal law to ignore vacaturs for rehabilitation, which, at least in some cases, reflect a measured judgment that the defendant is rehabilitated, but recognize vacaturs that solely aim to help the defendant avoid adverse immigration consequences.

In light of the foregoing, we join our sister circuits in holding that the BIA's conclusion -- that an alien remains convicted of a removable offense for federal immigration purposes when the predicate conviction is vacated simply to aid the alien in avoiding adverse immigration consequences and not because of any procedural or substantive defect in the original conviction -- is a permissible construction of the statute and is therefore entitled to deference. See, e.g., Sanusi v. Gonzales, 474 F.3d 341, 342-43 (6th Cir. 2007) ("We deny the petitions for review on the ground that the state court's vacation of Sanusi's conviction was ineffective for immigration purposes because it was done

-17-

solely for the purpose of ameliorating the immigration consequences to petitioner.") (citing Zaitona v. INS, 9 F.3d 432 (6th Cir. 1993); Ali v. Ashcroft, 395 F.3d 722, 728-29 (7th Cir. 2005).[9]

2. Does the BIA's construction of 8 U.S.C. § 1101(a)(48)(A) violate the full faith and credit statute?

We turn now to Saleh's additional argument that the interpretation the BIA adopted, and which we here deem reasonable, violates the statutory analogue of the full faith and credit clause. See 28 U.S.C. § 1738 (federal courts must give full faith and credit to state acts, records, and judicial proceedings); cf. U.S. Const. art. IV, § 1. We agree with the First Circuit that "section 1101(a)(48)(A) does not infract applicable principles of full faith and credit," Herrera-Inirio, 208 F.3d at 307, because "neither the constitutional clause nor its statutory analogue (binding federal courts) purports to prevent federal legislative authorities from writing federal statutes that differ from state statutes or from attaching, to words in a federal statute, a meaning that differs from the meaning attached to the same word when used in a statute enacted

---

[9] We note that our holding in this case is limited to post-conviction relief granted solely to avoid adverse immigration consequences and not because of any procedural or substantive defect in the original conviction, and we leave for another day the effect of post-conviction relief granted for other reasons.

-18-

by a state," Molina v. INS, 981 F.2d 14, 19 (1st Cir. 1992) (Breyer, J.).

Similarly, we have held that the full faith and credit statute does not prevent a federal court from taking cognizance of a state youthful offender adjudication as a prior conviction in sentencing even though the adjudication is not regarded as a conviction under state law:

> [T]he "principles of federalism and comity embodied in the full faith and credit statute," Growe v. Emison, 507 U.S. 25, 35, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), are not endangered when a sentencing court, not questioning the propriety of the state's determination in any way, interprets how to apply New York's youthful offender adjudications to a Guidelines analysis. . . . The federal sentencing court is neither refusing to recognize nor relitigating the validity of [defendant's] New York state judgment of conviction or his youthful offender sentence. Instead, it is merely noticing and acting upon the <u>fact</u> of [defendant's] prior conviction."

United States v. Jones, 415 F.3d 256, 265 (2d Cir. 2005) (internal citations omitted). Here, too, the BIA is simply interpreting how to apply Saleh's vacated State conviction for receiving stolen property to the INA and is not refusing to recognize or relitigating the validity of Saleh's California state conviction. The full faith and credit statute is not thereby violated.

B. Did the BIA properly deny Saleh's application for cancellation of removal?

Finally, the BIA did not err in affirming the IJ's denial of Saleh's application for cancellation of removal. The application

-19-

was untimely.  In any event, Saleh was ineligible for the relief because he does not satisfy the provision's seven-year continuous residence requirement, 8 U.S.C. § 1229b(a)(2).  His conviction of a removable offense (which, for the above reasons, stands for federal immigration purposes) triggers the "stop-time rule," 8 U.S.C. § 1229b(d)(1), under which an alien's continuous residency or physical presence ends, for purposes of cancellation of removal, on the date he commits a qualifying offense or on the date a notice to appear is filed.  Accordingly, Saleh's period of continuous residence ended, at the very latest, in 1993, after only three years in the country.  See generally Tablie v. Gonzales, 471 F.3d 60, 61-62 (2d Cir. 2006).[10]

### III. CONCLUSION

We have considered all of Saleh's arguments on appeal and find them to be without merit.  For the foregoing reasons, we deny Saleh's petition for review.  The pending motion for a stay of removal in this case is denied as moot.

---

[10] After the filing of this opinion, it was brought to the Court's attention that the "stop-time" rule may not apply retroactively to offenses committed before April 1, 1997, the effective date of the Illegal Immigrant and Immigrant Responsibility Act of 1996.  That issue is presently before another panel of this Court but was never presented here by Saleh.  Accordingly, we deem Saleh to have waived that argument. See Yueqing Zhang, 426 F.3d at 542 n.1.  Nothing in this opinion should be construed as deciding whether the "stop-time" rule applies retroactively.

-20-